United States District Court
Southern District of Texas
**ENTERED**
January 03, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| EDWARD ROGERS, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:20-cv-00216 |
| | § | |
| STANDARD ECO, LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## ORDER AND OPINION

Before me are three post-trial motions: (1) Plaintiff's Motion to Enter Judgment (Dkt. 86); (2) Defendant's Motion to Enter Judgment (Dkt. 87); and (3) Defendant's Motion for Judgment as a Matter of Law (Dkt. 88). After carefully reviewing the parties' arguments, the record, and the applicable law, and for the reasons discussed below, Plaintiff's motion (Dkt. 86) is **GRANTED**, and Defendant's motions (Dkts. 87 and 88) are **DENIED**. Final judgment will issue by separate order.

### BACKGROUND

Standard Eco LLC ("Standard Eco") develops and installs turnkey grid-tied solar electric systems. In January 2019, Edward Rogers ("Rogers") met with an authorized representative of Standard Eco to discuss purchasing a solar panel system for his home. During the meeting, Rogers made clear that his aim was to achieve net-zero efficiency (i.e., produce enough electricity to offset his electric costs). Relying on representations that a 41-panel system would result in net-zero efficiency, Rogers agreed to purchase a solar panel system from Standard Eco for $55,896.

During the installation process, Standard Eco's subcontractor cracked at least 50 roof tiles and drilled through a handful of underlying panels. On top of

1

that, the solar panel system woefully failed to live up to expectations, producing a grand total of $32.60 in solar grid credit between July 2019 and January 2020.

In October 2019, Rogers contacted Standard Eco regarding the installation-related issues. Standard Eco assured Rogers it would fix his roof and resolve any issues concerning the system's functionality. But that did not happen. Instead, following a series of storms in December 2019 and January 2020, water seeped through the holes in Rogers's roof, causing extensive damage to his ceiling and drywall. Standard Eco denied responsibility for the water damage[1] and assured Rogers his solar panel system was working as promised.

Rogers eventually paid out of pocket to remove the solar panel system and, in July 2020, sued Standard Eco for breach of contract and violations of the Texas Deceptive Trade Practices Act ("DTPA"). On October 25, 2021, the case went to trial on the DTPA claims.[2] After a three-day trial, the jury returned a verdict in Rogers's favor, finding that Standard Eco: (1) engaged in a false, misleading, or deceptive act or practice on which Rogers relied to his detriment; (2) engaged in an unconscionable action or course of action; and (3) failed to comply with either an express or implied warranty. *See* Dkt. 81 at 4–6. The jury found that all three were a producing cause of Rogers's damages and awarded him $33,995 as reasonable and necessary costs to repair the damage to his home, $55,896 for the purchase of the solar panel system, and $35,000 in attorney's fees. *See id.* at 8.

Before the Court is Standard Eco's motion for judgment as a matter of law as to the award of $55,896 only. *See* Dkts. 87 and 88. Standard Eco hitches its wagon to a single argument—the jury's verdict is not supported by legally sufficient evidence because the only evidence regarding the solar panel system's functionality

---

[1] At trial, Standard Eco stated that its subcontractor did not adequately convey the extent of damage to Rogers's home and represented that it would gladly fix any damage caused by the installation process. True to its word, Standard Eco does not challenge the jury's award of reasonable and necessary costs to repair the damage to Rogers's home. *See* Dkt. 88 at 9.

[2] During trial, Rogers dropped his breach-of-contract claim.

is Rogers's lay witness testimony. *See* Dkt. 88. Rogers responds that expert evidence is not required to establish that Standard Eco misrepresented the character of the solar panel system; his testimony and electric bills are sufficient to show that it did not perform as promised. *See* Dkt. 89. Regardless, Rogers argues, the jury's verdict is supported by its findings that Standard Eco engaged in an unconscionable course of conduct and failed to comply with either an express or implied warranty, both of which the jury found were also a producing cause of his damages. *See id.*

## STANDARD OF REVIEW

Judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a)(1). *See Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 296–97 (5th Cir. 2005) ("A jury verdict must be upheld unless there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did." (quotation omitted)).

There is no legally sufficient evidentiary basis to support a jury's verdict when the facts and inferences point so strongly and overwhelmingly in favor of the moving party that the court believes reasonable jurors could not arrive at a contrary verdict. *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001). Courts are to review all evidence in the record—not just the evidence that supports the nonmovant's case—but in a light that draws all reasonable inferences in favor of the nonmoving party; however, a court may not make credibility determinations or weigh the evidence, as those are solely functions of the jury. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000). If there is more than a scintilla of evidence in the record to support the jury's findings, then the evidence is sufficient as a matter of law. *See Wallace*, 271 F.3d at 219 ("Finally, there must be more than a mere scintilla of evidence in the record to render the grant of [judgment as a matter of law] inappropriate.").

## ANALYSIS

As mentioned, Standard Eco stakes its motion for judgment as a matter of law on one argument—that Rogers, as a lay witness, is not qualified to opine on the solar panel system's functionality. *See* Dkt. 88 at 5 ("In order to render such an opinion that the solar panels were not of a particular character, particular standard, quality or grade when they were of another[,] Plaintiff would have to be an expert on solar panels."). Standard Eco's argument tracks the jury charge, which read:

### QUESTION NO. 1

Did Standard Eco, LLC engage in any false, misleading, or deceptive act or practice on which Edward Rogers relied to his detriment and that was a producing cause of damages to Edward Rogers?

"False, misleading, or deceptive act or practice" means *any of the following*:

(a) Representing that the Solar Panel System had characteristics, uses, or benefits which it did not have, or

(b) Representing that the Solar Panel System was of a particular standard, quality, or grade when it was of another, or

(c) Representing that the [sic] Standard Eco, LLC had insurance when it did not, or

(d) Failing to disclose information about the Solar Panel System that was known at the time of the transaction with the intention of inducing Edward Rogers into the transaction, which transaction Edward Rogers would not have entered had the information been disclosed.

Dkt. 81 at 4 (emphasis added). The jury simply answered "Yes." *See id.*

Standard Eco's argument fails for a multitude of reasons. As explained later in this opinion, Rogers was not required to present expert evidence to establish that the solar panel system failed to function as promised. Moreover, even if Standard Eco is correct and Rogers, as a lay witness, was not permitted to testify concerning the solar panel's functionality, there is still sufficient evidence in the record to support the jury's finding on damages. The jury separately found that

Standard Eco failed "to comply with [an express or implied] warranty" and engaged in "an unconscionable action or course of action," both of which the jury determined were also producing causes of Rogers's damages. *See id.* at 5–6 (Question Numbers 2 and 3). In other words, so long as there is more than a scintilla of evidence to support either of these two findings, legally sufficient evidence supports the jury's damages verdict, as well.[3]

### A. LEGALLY SUFFICIENT EVIDENCE SUPPORTS THE JURY'S FINDING THAT STANDARD ECO BREACHED AN EXPRESS OR IMPLIED WARRANTY

Rogers testified that Standard Eco's sales representative assured him that Standard Eco's solar panel system could achieve net-zero efficiency. Specifically, Rogers testified that when he asked the salesperson what it would take to generate a net-zero electric bill, the salesperson upsold him on the 41-panel system (as opposed to a lower-tier 30-panel system) by assuring him that the 41-panel system was necessary to achieve net-zero efficiency.

Standard Eco's only live witness at trial was its sole member, Elijah Lee Chaffino. Although Chaffino testified that solar panels only feed (i.e., sell) electricity back to the electric grid when production exceeds consumption—meaning Rogers's electric bills did not account for the solar energy he consumed (i.e., solar grid credits were not a fair representation of whether his system was functioning properly)—Rogers's testimony regarding the representations made to him by Standard Eco's sales representative went uncontroverted.[4] To cinch the matter, Rogers's electric bills—which I discuss at the end of this opinion—

---

[3] Question Number 5—which ascribed Rogers's damages—asked: "What sum of money, if any, paid now in cash would fairly and reasonably compensate Edward Rogers for his damages, if any, that resulted from the conduct you have found in answer to Question Nos. 1, 2, *or* 3?" Dkt. 81 at 8 (emphasis added).

[4] While Chaffino did testify that *he* would never promise a customer that his company's solar panels could achieve net-zero efficiency, he conceded that Standard Eco had no records of who sold Rogers the solar panel system, how the salesperson was trained, or any correspondence between the salesperson and Standard Eco.

5

demonstrated that Rogers's solar panel system did come close to achieving net-zero efficiency.

B. **LEGALLY SUFFICIENT EVIDENCE SUPPORTS THE JURY'S FINDING THAT STANDARD ECO ENGAGED IN UNCONSCIONABLE CONDUCT**

Evidence was adduced at trial that Chaffino concealed his true name on Standard Eco's webpage and did not include his surname when communicating with customers. This is relevant to the issue of whether Chaffino misled Rogers because evidence was also admitted showing that Chaffino has a felony drug conviction for which he was on probation at the time Rogers purchased his solar panel system. Rogers testified that he: (1) researched at least three solar panel companies; and (2) would not have chosen Standard Eco had he known that Chaffino was a convicted felon who was on probation at the time. In addition, the sales representative's assurance that the 41-panel system was necessary to attain net-zero efficiency is also evidence of unconscionable conduct because Chaffino admitted that his company's solar panels could not realistically achieve net-zero efficiency.

Thus, more than a scintilla of evidence supports the jury's finding that Standard Eco engaged in unconscionable conduct.

C. **EXPERT TESTIMONY IS NOT REQUIRED TO ESTABLISH THAT STANDARD ECO MISREPRESENTED THE SOLAR PANEL SYSTEM'S CAPABILITIES**

For the sake of completeness, I address Standard Eco's principal argument—that Rogers was required to present expert testimony to establish that the solar panels did not live up to the represented standards.

"In a diversity case, state law determines the kind of evidence that must be produced to support a verdict." *McCandless v. Beech Aircraft Corp.*, 779 F.2d 220, 223 (5th Cir. 1985). Under Texas law, whether expert testimony is required to prove a particular issue is a question of law. *See FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 89 (Tex. 2004). In determining whether expert testimony is required, courts consider whether the issue involves matters beyond

6

"the general experience and common understanding of laypersons." *Mack Trucks v. Tamez*, 206 S.W.3d 572, 583 (Tex. 2006) ("Expert testimony is required when an issue involves matters beyond jurors' common understanding.").

For example, in *Fulgham*, the Texas Supreme Court held that expert testimony was necessary to establish the standard of care for connecting refrigerated trailers to tractors and for the frequency and type of inspection and maintenance of such connectors because those matters were not within the general experience and common understanding of laypersons. *See* 154 S.W.3d at 91. *See also Hager v. Romines*, 913 S.W.2d 733, 735 (Tex. App.—Fort Worth 1995, no writ.) ("Not only is flying an airplane not within the realm of experience of the ordinary, prudent person or juror, applying herbicide and pesticide aerially requires use of specialized equipment and techniques that are not familiar to the ordinary person. (footnote omitted)).

On the other end of the spectrum, less-sophisticated issues fall squarely within the common juror's knowledge or experience and, therefore, do not require expert testimony. *See Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 355 (Tex. 1987) (holding "breach of the implied warranty was plainly within the common knowledge of laymen and did not require expert testimony" because "jurors had sufficient knowledge to find that the failure to connect a washing machine drain would not be considered good and workmanlike"); *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986) ("[T]he subject of house repairs [is not] one for experts or skilled witnesses alone"); *Culwell v. Diaz*, No. 05-12-00093-CV, 2013 WL 2609995, at *3 (Tex. App.—Dallas June 7, 2013, no pet.) ("[D]etermining the value of a car for purposes of calculating diminution of value is not so complicated that an expert's testimony is necessary for a jury to understand."); *Brown v. State*, No. 03-10-00515-CR, 2013 WL 857252, at *4 (Tex. App.—Austin Mar. 7, 2013, no pet.) (holding that the plaintiff's injuries, "as described by [plaintiff's] testimony and the medical records—were within the common knowledge and experience of the jurors and did not require expert testimony").

7

Unlike the specialized equipment and techniques at issue in *Fulgham*, whether the solar panels in this case lived up to representations made by Standard Eco's sales representative is not outside a lay juror's general knowledge and experience. Although solar panels are admittedly complex, determining whether the panels functioned as promised does not require specialized insight into their nuts and bolts.

Here, sufficient evidence established that Standard Eco's salesperson assured Rogers that the 41-panel system would achieve net-zero efficiency; that Rogers believed, based on the salesperson's representations, the savings from his electric bills would ultimately pay for the solar panel system; and the system did not function as promised and resulted in hardly any savings. Indeed, Rogers's electric bills—which covered an 18-month period and ranged from $180 to $600 per month—showed a total solar grid credit of only a few hundred dollars.[5] Certainly, it is within a lay juror's general experience and common knowledge that such savings would never offset the solar panels' purchase price—i.e., no expert testimony was necessary to bridge the analytical gap between the promise(s) and performance. Put differently, Rogers's electric bills and his testimony regarding those bills demonstrated—without the need for expert testimony—that the solar panel system did not come close to achieving net-zero efficiency.

Granted, Chaffino did testify that Rogers was misinterpreting his electric bills, which he claimed did not account for solar energy Rogers consumed; that, before its removal, the solar panel system was reducing Rogers's energy costs and even generating income by feeding electricity back into the electric grid; and that

---

[5] Rogers's electric bills from mid-July 2019 through mid-June 2020 include a "solar grid credit" calculation for each monthly billing period under a "Solar Sell Back" plan. Rogers's monthly savings were usually in the low teens and topped out at $32.59. For unexplained reasons, beginning in mid-June 2020, Rogers's electric bills ceased to include any information regarding solar grid credit.

Rogers was simply using more electricity than the system generated.[6] But it was the jury's role to weigh credibility and decide whom to believe. It's not my place to second guess the jury's decision. *See United States v. Zuniga*, 18 F.3d 1254, 1260 (5th Cir. 1994) ("We will not second guess the jury in its choice of which witnesses to believe.").

Because the subject is not one for experts alone, Rogers's testimony is sufficient to establish that the performance of the solar panels fell short of Standard Eco's representations. The jury was free to believe or disbelieve both Rogers and Chaffino; they chose to believe Rogers.

## CONCLUSION

For the reasons explained above, legally sufficient evidence supports the jury's verdict. Accordingly, Plaintiff's Motion to Enter Judgment (Dkt. 86) is **GRANTED**; Defendant's Motion to Enter Judgment (Dkt. 87) is **DENIED**; and Defendant's Motion for Judgment as a Matter of Law (Dkt. 88) is **DENIED**.

Final judgment will issue by separate order.

SIGNED this 3rd day of January 2022.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

---

[6] However, Chaffino also admitted that he did not have personal knowledge concerning how Reliant Energy calculated Rogers's electric bills.